United States District Court
Southern District of Texas

**ENTERED**

February 25, 2026

Nathan Ochsner, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| ANTONIO M. LACY, TDCJ #594575, | § | |
| | § | |
| Plaintiff, | § | |
| v. | § | CIVIL ACTION NO. H-25-1033 |
| | § | |
| ANTHONY C. MYLES, *et al.*, | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM AND OPINION

Antonio M. Lacy is an inmate in the custody of the Texas Department of Criminal Justice. Defendants Anthony C. Myles, Dana C. Sullivan, and Kyla E. Rosario work at the TDCJ's Pack Unit. Defendants Kolton Stoker, Yvonne S. Knight, Graciela Ruiz, and Liese Harrell work at the University of Texas Medical Branch. Lacy is permanently mute because of a laryngectomy and needs an artificial larynx to communicate. Lacy alleges that the defendants confiscated his artificial larynx in retaliation for letters he wrote to TDCJ representatives about an alleged relationship between Rosario, a Pack Unit employee, and Sullivan, an assistant warden.

Lacy originally filed this case in state court, but the defendants removed the action to federal court because Lacy alleges federal claims. (Docket Entry No. 1). Lacy has moved to remand, (Docket Entry No. 6), and for the court to appoint counsel, (Docket Entry Nos. 12, 13, 18). The defendants moved to dismiss, (Docket Entry No. 4), and to stay discovery, (Docket Entry No. 11).

Based on the pleadings, the motion, the record, and the applicable law, the court grants in part and denies in part the defendants' motion to dismiss, (Docket Entry No. 4), and grants Lacy's motions to appoint counsel, (Docket Entry Nos. 12, 13, 18). Because this court has federal-

question jurisdiction, the motion to remand, (Docket Entry No. 6), is denied.  Because some claims survive the motion to dismiss, the defendants' motion to stay discovery, (Docket Entry No. 11), is denied.

## I.    Background

Lacy is an inmate in the TDCJ Pack Unit in Grim County, Texas.  (Docket Entry No. 1-3 ¶ 9).  He is a minimum-custody prisoner assigned to the Sheltered Housing Unit.  (*Id.*).  Lacy previously underwent a laryngectomee and is mute as a result.  (*Id.* ¶¶ 24, 27).  He uses an artificial larynx, an electronic device that he holds to his throat to speak.  (*Id.* ¶ 26).

Lacy alleges that, in October 2024, Myles, Stoker, Knight, Ruiz, and Harrell "came bursting" into his cubicle.  (*Id.* ¶ 11).  Lacy alleges that Myles instructed him to leave the area so that Stoker, Harrell, Ruiz, and Knight could search his materials, which included his medical devices.  (*Id.* ¶ 12).  Lacy alleges that the defendants confiscated his oral adapter, battery charger, electronic artificial larynx, black carrying bag, and writing board.  (*Id.* ¶ 13).

Lacy alleges that his medical devices were confiscated in retaliation for letters he was "writing to TDCJ Directors [and] State and Federal Representatives" about an alleged intimate relationship between Rosario and Sullivan.  (*Id.* ¶¶ 15, 19, 20).  Lacy alleges that the day before the defendants confiscated his artificial larynx and related equipment, Rosario entered his cell and told him to "leave her alone and she will leave [him] alone," and threatened that if he did not do so, he would have a "hard" "time" at the Pack Unit.  (*Id.* ¶ 18).  Lacy alleges that Rosario planned the search of his cubicle and used Sullivan's position to enlist the other defendants.  (*Id.* ¶¶ 19, 21, 30).

Lacy sues for medical negligence, (*id.* ¶¶ 22–31); theft or conversion under the Texas Theft Liability Act, (*id.* ¶¶ 33); discrimination and retaliation, in violation of the First, Fifth, and

Fourteenth Amendment, (*id.* ¶ 34); and violations of the Eighth Amendment, (*id.*), Article I, Section 13 to the Texas Constitution, (*id.* ¶ 35), and the Americans with Disabilities Act and Rehabilitation Act, (*id.* ¶¶ 37–38).  Lacy seeks to recover $2,000, the value of his medical supplies; an additional $1,000, under the Texas Theft Liability Act; and litigation-related costs.  (*Id.* ¶¶40–43).  He also seeks a declaration that defendants were negligent and an injunction that prevents the defendants from retaliating, harassing, discriminating, or transferring him to any other TDCJ Unit. (*Id.* ¶¶36, 44).

Lacy filed this case in state court, and the defendants removed because Lacy alleges federal claims.  (Docket Entry No. 1).  Lacy moved to remand, (Docket Entry No. 6), and for the court to appoint counsel, (Docket Entry Nos. 12, 13, 18).  The defendants moved to dismiss, (Docket Entry No. 4), and to stay discovery, (Docket Entry No. 11).

## II.    The Legal Standard

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (quoting *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

3

possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Eli Lilly & Co. v. Revive Rx, LLC*, ___ F. Supp. 3d ___, 2025 WL 3640703, at *5 (S.D. Tex. Dec. 15, 2025) (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)).

"A document filed pro se is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). Under this standard, pleadings filed by a pro se litigant are entitled to a liberal construction that affords all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2000).

## III.  Analysis

Four motions are pending before the court.  The motion to remand, (Docket Entry No. 6); the motion to dismiss, (Docket Entry No. 4); the motions to appoint counsel, (Docket Entry Nos. 13, 14, 18); and the motion to stay discovery, (Docket Entry No. 11).

Because this court has federal-question jurisdiction, the motion to remand, (Docket Entry No. 6), is denied.  The defendants' motion to dismiss, (Docket Entry No. 4), is granted in part and denied in part.  Lacy's motions to appoint counsel, (Docket Entry Nos. 12, 13, 18), are granted. Because claims survive the motion to dismiss, the defendants' motion to stay discovery, (Docket Entry No. 11), is denied.

### A.      The Motion to Dismiss

The defendants present five arguments in their motion to dismiss: (1) that Lacy lacks standing to pursue the injunctive relief he requests; (2) Lacy cannot recover damages against the officials that he sued in their official capacity; (3) Lacy's theft, conversion, and negligence claims fail; (4) Lacy's constitutional claims under Section 1983 fail; and (5) Lacy's claim under the Texas constitution fails.  (Docket Entry No. 4 at ii).  The defendants do not move to dismiss Lacy's claims under the Americans with Disabilities Act or the Rehabilitation Act.

### 1.      Injunctive Relief Barring Retaliation and Transfer

Lacy seeks an injunction that prevents the defendants from retaliating, harassing, discriminating, or transferring him to any other TDCJ Unit.  (*Id.* ¶ 44).  "To have Article III standing, a plaintiff must show an injury in fact that is fairly traceable to the challenged action of the defendant and likely to be redressed by the plaintiff's requested relief."  *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)). "Requests for injunctive and declaratory relief implicate the intersection of the redressability and injury-in-fact requirements."  *Id.*  Such relief "cannot conceivably remedy any past wrong," *id.* (quoting *Steel Co. v. Citizen for a Better Env.*, 523 U.S. 83, 108 (1998)), so plaintiffs must show a "continuing injury or threatened future injury," *id.*  Lacy has not adequately alleged that harassment is likely to continue or that he has been frequently harassed in the past.  Instead, his claims arise out of a discrete incident.  He has not alleged facts that would give him standing to obtain an injunction that prevents the defendants from harassing him or transferring him to another unit.

### 2.    The Official-Capacity Damages under Section 1983

Lacy sues some of the defendants in both their official and unofficial capacities.  (Docket Entry No. 1-3 ¶ 8).  To the extent Lacy seeks damages against the defendants in their official capacities, these damages are not available under Section 1983.  *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002).

### 3.    The Tort Claims

Lacy alleges theft, conversion, and negligence claims against the defendants.  (Docket Entry No. 1-3 ¶¶ 21–33).  The defendants argue that these state-law tort claims are barred under § 101.106(f) of the Texas Tort Claims Act.  That Act waives governmental immunity in some respects, and also "discourage[s] or prevent[s] recovery against [] [government] employee[s]." *Franka v. Velasquez*, 332 S.W.3d 367, 384 (Tex. 2011).  Under § 101.106, "the plaintiff must elect to sue either the governmental unit or the employee in his individual capacity." *Pardo v. Iglesias*, 672 S.W.3d 428, 432 (Tex. App.—Houston [14th Dist.] 2023), *reconsideration en banc denied*, 2023 WL 4188343 (Tex. App.—Houston [14th Dist.] June 27, 2023, no pet.).  Section 101.106(f) applies when a plaintiff "files suit against only the employee in the employee's individual capacity, but the suit is actually based on conduct within the general scope of the employee's employment and could have been brought against the governmental unit . . . ." *Id.*  In that situation, "the suit is considered to be against the employee in his official capacity only, and the employee must [] be dismissed on a proper motion." *Id.*

Section § 101.106(f) provides:

> If a suit is filed against an employee of a governmental unit based on conduct within the general scope of that employee's employment and if it could have been brought under this chapter against the governmental unit, the suit is considered to be against the employee in the employee's official capacity only.  On the employee's motion, the suit against the employee shall be dismissed unless the plaintiff files amended

pleadings dismissing the employee and naming the governmental unit as defendant on or before the 30th day after the date the motion is filed.

Defendants invoking § 101.106(f) must establish that: (1) the officers were employees of a governmental unit; (2) the suit against them is based on conduct within the general scope of their employment; and (3) the suit could have been brought against the governmental unit. *Pardo*, 672 S.W.3d at 432–33.

The first element is satisfied. A governmental unit means "any . . . institution, agency, or organ of government the status and authority of which are derived from the Constitution of Texas or from laws passed by the legislature under the constitution." § 101.001(3)(D). Lacy alleges that each of the defendants were State employees, either of the Department of Criminal Justice or the University of Texas Medical Branch.

The second element is also satisfied. "Scope of employment" means "the performance for a governmental unit of the duties of an employee's office or employment and includes being in or about the performance of a task lawfully assigned to an employee by competent authority." § 101.001(5). Conduct satisfies this definition for purposes of § 101.106(f) when "a connection exists between the employee's job duties and the alleged tortious conduct." *Pardo*, 672 S.W.3d at 433 (alterations adopted) (quoting *Laverie v. Wetherbe*, 517 S.W.3d 748, 753 (Tex. 2017)). When the defendants allegedly searched Lacy's cubicle, they did so as state employees tasked with overseeing inmates in a state prison.

The third element is satisfied. A claim can be brought under the Texas Tort Claims Act if the claim "is in tort and not under another statute that independently waives immunity." *Franka*, 332 S.W.3d at 381; *see also Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 659 (Tex. 2008) (holding that all tort theories of recovery alleged against a governmental unit are presumed to be under the Texas Tort Claims Act). A suit could have been brought under the Act

7

"regardless of whether the Act waives immunity from suit." *Franka*, 332 S.W.3d at 385. Lacy's negligence, theft, and conversion claims "sound in tort under Texas common law." *Martin v. Petty*, 699 F. Supp. 3d 547, 563 (S.D. Tex. 2023). "They could have been brought under the Act within the meaning of § 101.106(f)." *Id.* (alternations adopted).

The officers are entitled to the dismissal of Lacy's state-law claims under § 101.106(f) because no waiver applies that would overcome sovereign immunity as to those claims. Section 101.057(2) of the Act excepts intentional-tort claims, including claims for theft and conversion, from its waiver. *See Dunsmore v. Burroughs*, No. 2:16-CV-132, 2018 WL 8263876, at *14 (S.D. Tex. Aug. 2, 2018) ("Plaintiff claims sounding in theft or conversion are intentional torts, and the TTCA does not provide any waiver of sovereign immunity for such claims."), *report and recommendation adopted*, No. 2:16-CV-132, 2019 WL 2085569 (S.D. Tex. May 13, 2019). Lacy's negligence claim is derivative of his conversion and theft claims; he alleges that the defendants were "medically negligent" when they confiscated his property. (*See* Docket Entry No. 9 at 9). As a result, his negligence claims are barred. *See Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001) (barring a negligence claim because the alleged misconduct was the "same conduct that form[ed] the basis of her [intentional-tort] claim[s]").

Even if Lacy's negligence-by-conversion claim did not merely recast his intentional-tort claims, it would still fail because none of the statutory waivers of sovereign immunity for negligence claims do not apply. The Act waives sovereign immunity for negligence claims involving: (1) the use of publicly owned automobiles; (2) premises defects; and (3) injuries arising out of conditions or use of property. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225 (Tex. 2004). The only exception that could apply is the third, but Lacy's injury does not flow from the "use" of property. *See Rattray v. City of Brownsville*, 662 S.W.3d 860, 871 (Tex. 2023)

(defining the "use" of property as "to put or bring into action or service; to employ for or apply to a given purpose" (quoting *Mount Pleasant Indep. Sch. Dist. v. Estate of Lindburg*, 766 S.W.2d 208, 211 (Tex. 1989))).  Rather, Lacy's claims follow from the defendants taking his property and thereby preventing him from using it.  The defendants did not employ the property to injure Lacy.  *Cf. Texas Dep't of Crim. Just. v. Miller*, 51 S.W.3d 583, 587 (Tex. 2001) ("[T]he failure to use . . . property . . . do[es] not waive sovereign immunity.")

Last, Lacy alleges that the defendants were negligent because they denied him proper medical care for his laryngectomy, including failing to choose the appropriate procedure, failing to treat his laryngectomy, and failing to provide the medical and nursing care required.  (Docket Entry No. 1-3 ¶ 29).  Lacy alleges that the defendants were deliberately indifferent toward his health.  (*Id.*).  This argument fails, for two reasons.  First, Lacy does not allege any facts—other than those related to the October 2024 search and confiscation of his property—that would support a deliberate indifference or negligence claim based on improper medical care.  Second, there is no basis to conclude that Lacy's medical negligence claim is covered by the Act's limited waiver provisions.  *See Miller*, 51 S.W.3d at 588 (ruling that "the non-use of tangible personal property and an error in medical judgment" are not "within the statutory waiver").

Lacy's state-law claims are dismissed.  The court dismisses these claims, largely with prejudice, because amendment would be futile.  Lacy is granted leave to amend only to assert more facts that support his allegations that the defendants did not choose the appropriate procedure for his laryngectomy.  (*See* Docket Entry No. 1-3 ¶ 29(a)).  Amendment may not be futile because such a claim might involve the use of property—"drugs" or "treatment"—that "hurt" Lacy "or made him worse, in and of themselves."  *Miller*, 51 S.W.3d at 588.

9

### 4.    The Constitutional Claims

The defendants move to dismiss Lacy's constitutional claims for two reasons: the claims fail on the merits and the defendants are entitled to qualified immunity.  (Docket Entry No. 4 at 8–15).  The claims and arguments are analyzed below.

### i.    Deprivation of Property Without Due Process

Construing Lacy's complaint broadly, he alleges that he was deprived of his property in violation of due process.  (Docket Entry No. 4 at 8–9; Docket Entry No. 9 at 10–11).  The Fourteenth Amendment to the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law."  An individual's loss of property because of a government employee's action violates the Fourteenth Amendment only if no meaningful and adequate state-law post-deprivation remedy for the loss is available.  *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984).  A state-law post-deprivation remedy is considered meaningful and adequate even if the plaintiff might not be able to recover the full amount of his loss.  *See Leggett v. Williams*, 277 F. App'x 498, 500 (5th Cir. 2008) (per curiam) (citing *Hudson*, 468 U.S. at 535).  When a state-law post-deprivation remedy exists, a plaintiff may sue in federal court for the intentional loss or destruction of his property only if he first pursues the state-law remedy and relief is denied on grounds other than the merits of the claim.  *See Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983).

Lacy's claim that the defendant "officers stole his property is premature, at best, because he did not allege that he pursued the post-deprivation remedy provided by Texas law."  *Adams v. Harris Cnty. Jail*, No. CV H-23-3940, 2024 WL 1144257, at *6 (S.D. Tex. Mar. 15, 2024).  Texas law provides a remedy for an inmate's claim that prison officials stole his property.  *See* Tex. Gov't Code § 501.007 (permitting a recovery of up to $500.00 for an inmate's lost or damaged property).

"Because a post-deprivation state-law remedy exists, [Lacy] must pursue that remedy before filing suit on the loss of property in federal court." *Adams*, 2024 WL 1144257, at *6; *see Spicer v. Collins*, 9 F. Supp. 2d 673, 684 (E.D. Tex. 1998) ("In Texas, an inmate incarcerated in the Texas Department of Criminal Justice, Institutional Division, has an adequate postdeprivation tort remedy for property taken from them by prison personnel.").

Lacy's due-process claim is dismissed, without prejudice, for failing to pursue his state law remedy before filing suit.

### ii.    First Amendment Retaliation

Lacy alleges that he was retaliated against for writing letters to state and federal officials reporting an intimate relationship between Rosario and Sullivan. (Docket Entry No. 1-3 ¶¶ 15, 19, 20).

"Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected activities." *Butts v. Martin*, 877 F.3d 571, 589 (5th Cir. 2017) (quoting *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009)). "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Jones v. Greninger*, 188 F.3d 322, 324–25 (5th Cir.1999)). An inmate must allege more than his personal belief that he is the victim of retaliation. *See Jones*, 188 F.3d at 325 (citing *Johnson v. Rodriguez,* 110 F.3d 299, 310 (5th Cir. 1997)). To demonstrate that a defendant acted with intent to retaliate, a prisoner must produce "direct evidence of motivation" or, at the very least, he must "allege a chronology of events from which retaliation may plausibly be inferred."

11

*Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988)).

Lacy states a retaliation claim against Rosario and Sullivan. Lacy alleges that they had a motive to retaliate for the letters he sent complaining about their allegedly improper relationship; that Rosario warned Lacy to stop making those complaints; and the confiscation of his property shortly thereafter. (Docket Entry No. 1-3 ¶¶ 10–12, 18–21). But Lacy does not state a retaliation claim against Myles, Stroker, Knight, Ruiz, or Harrel because Lacy does not plead facts showing that those officials knew of Rosario's and Sullivan's alleged reason for retaliating against Lacy. There can be no retaliation if those defendants acted without knowledge of Lacy's reports of the relationship between Rosario and Sullivan. *See Beattie v. Madison Cnty. Sch. Dist.*, 254 F.3d 595, 604 (5th Cir. 2001) ("If there is no evidence that the [defendant] knew of the protected activity, [the plaintiff] cannot show that the activity motivated retaliatory behavior.").

The defendants' remaining arguments for dismissing the claims against Rosario and Sullivan are unpersuasive. The defendants argue that the deprivation of personal property was *de minimis* and would not deter a prisoner from exercising his or her rights. (Docket Entry No. 4 at 11). But the cases the defendants cite concerned the temporary deprivation of *de minimis* property, such as radios, ID cards, books, watches, or small amounts of cash. *See Flores v. Sanders*, No. 6:21cv145, 2024 WL 1507720, at *6, *15 (E.D. Tex. Jan. 10, 2024) (collecting cases), *rec. adopted*, 2024 WL 1216548 (E.D. Tex. Mar. 20, 2024); *see, e.g.*, *Hines v. Marshall*, No. 6:18CV344, 2020 WL 3066653, at *9 (E.D. Tex. Apr. 9, 2020), *rec. adopted*, 2020 WL 3064795 (E.D. Tex. June 9, 2020), *aff'd*, No. 20-40444, 2021 WL 4515392 (5th Cir. Oct. 1, 2021). Although *Flores* included the confiscation of a medical pillow, his property was returned to him 54 days later. *See Flores*, 2024 WL 1507720, at *6. In this case, the deprivation of Lacy's medical

equipment meant he could not speak, and he was without his equipment for over a year.  That is far from *de minimis*.  *See Gilmore v. Hodges*, 738 F.3d 266, 276–77 (11th Cir. 2013) (holding that an alleged deprivation of a hearing aid for two years could violate the Eighth Amendment).  A reasonable person would be deterred from asserting constitutional rights based on the deprivation of such an important medical device for such a long time.  *See Morris v. Powell*, 449 F.3d 682, 686 (5th Cir. 2006) (explaining that "this threshold is intended to weed out only inconsequential actions and is not a means to excuse more serious retaliatory acts by prison officials").

Second, the defendants argue that Lacy does not allege facts showing that Rosario and Sullivan caused Lacy to be deprived of medically necessary equipment.  (Docket Entry No. 4 at 11–12).  The defendants argue that they took only the supplies that they deemed medically unnecessary.  (*Id.*).  Because they deemed artificial larynx not medically necessary, the defendants argue, it would have been confiscated in any event, without any retaliatory motive.  (*Id.*).  The court cannot accept the defendants' argument at this stage in the litigation.  The defendants ask the court to draw inferences against Lacy when the standard of review requires this court to draw all reasonable inferences in his favor.  *Eli Lilly & Co.*, 2025 WL 3640703, at *5.  Lacy alleges that his artificial larynx was medically necessary; that the defendants confiscated this and related property in spite of his medical need; and that the defendants did so because Sullivan was in a supervisory position and able "to inflict fear" and "to carry out" the threats Rosario had made to stop Lacy from continuing to report the relationship between Sullivan and Rosario.  (Docket Entry No. 1-3 ¶¶ 17–19, 26–31).  Although the defendants argue that doctors made good-faith medical judgments about Lacy's need for the equipment, the complaint alleges that they breached the duty of care they owed Lacy as physicians and made decisions that were not based on good faith medical judgments but rather based on directions given for retaliatory purposes.  (*Id.* ¶¶ 26–29).  The court

13

must credit Lacy's allegations at this stage. Lacy has adequately alleged that the defendants would not have confiscated the medically necessary artificial larynx but for their alleged retaliatory motive.

Third, the defendants assert qualified immunity. Qualified immunity does not shield the defendants from this retaliation claim, on this record. It was clearly established law when the acts at issue occurred that a state official may not punish a prisoner for protected acts. *See Bibbs*, 541 F.3d at 270 (providing a clear test for prisoner-retaliation claims); *see also Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1324–26 (11th Cir. 2024) (explaining that retaliation claims are based on a clearly established broad statement of principle that do not require a materially identical case to abrogate qualified immunity), *cert. denied*, 145 S. Ct. 2702 (2025). The defendants' arguments for why Lacy's claims fail do not bear on the clearly-established-law analysis. For example, the court does not need case law precisely point to conclude that confiscating a medical device necessary to communicate would deter a prisoner from exercising his constitutional rights. A reasonable jury could readily find for Lacy on that element under clearly established retaliation principles. *See Juarez v. Aguilar*, 666 F.3d 325, 336 (5th Cir. 2011) (upholding the denial of qualified immunity for a retaliation claim when the retaliation allegations showed conduct falling "within the clearly established elements of retaliation in violation of [ ] First Amendment rights").

Lacy's claim against Rosario and Sullivan survive dismissal. Lacy's claim against Myles, Stroker, Knight, Ruiz, and Harrel are dismissed, without prejudice.

### iii. The Eighth Amendment & Article 1, Section 13 of the Texas Constitution

Lacy alleges that the defendants violated the Eighth Amendment because, as a result of their conduct, he is unable to speak, including in case of an emergency. (Docket Entry No. 1-3 ¶¶ 31, 34). He also alleges a violation of Article I, Section 13 of the Texas Constitution, the state-

law analogue to the Eighth Amendment. (*Id.* ¶ 35). The legal standard is the same for both provisions. *Duran v. State*, 363 S.W.3d 719, 724 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd).

The Eighth Amendment "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). An Eighth Amendment violation may occur when the "denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose." *Id.* To rise to the level of a constitutional violation, prison officials must exhibit deliberate indifference to a prisoner's serious medical needs. *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "Deliberate indifference" is more than mere negligence, *Gamble*, 429 U.S. at 104–06, but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result," *Farmer*, 511 U.S. at 835. Deliberate indifference requires that the defendant be subjectively aware of a substantial risk of serious harm to the inmate and recklessly disregard that risk. *Id.* at 829, 836. "Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). "Actions and decisions by officials that are merely inept, erroneous, ineffective, or negligent" do not amount to deliberate indifference. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 219 (5th Cir. 1998). "[T]he plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)).

"The failure to provide basic corrective devices may amount to deliberate indifference to a serious medical need." *Taylor v. Wexford Med.*, No. CV TDC-15-2395, 2017 WL 1194177, at *6 (D. Md. Mar. 30, 2017); *see Large v. Washington Cnty. Det. Ctr.*, 915 F.2d 1564, at *2 (4th Cir.

1990) ("[T]here is ample authority recognizing that the failure to provide comparable basic corrective/medical devices may amount to deliberate indifference to a serious medical need."). These include, for example, eyeglasses and hearing aids. *See, e.g.*, *Newman v. Alabama*, 503 F.2d 1320, 1331 (5th Cir. 1974) (an alleged failure to provide "eyeglasses and prosthetic devices" contributed to an Eighth Amendment claim); *Cooper v. Johnson*, 255 Fed. App'x. 891, 892 (5th Cir. 2007) (per curiam) (a prisoner who suffered from tinnitus that was treatable with a hearing aid and alleged that he was denied a hearing aid adequately pleaded an Eighth Amendment claim); *see also Gilmore*, 738 F.3d at 277 (a prison official "presented enough evidence to state a claim for deliberate indifference to a serious medical need" for a hearing aid); *De Rossitte v. Correct Care Sols., LLC*, 22 F.4th 796, 803 (8th Cir. 2022) ("If a jury credited De Rossitte's allegations, it could infer Vowell and Gifford were deliberately indifferent to his hearing needs."); *Koehl v. Dalsheim*, 85 F.3d 86, 88 (2d Cir. 1996) (similar).

Vocalization aids are sufficiently similar to the devices addressed in these and other cases to warrant similar Eighth Amendment scrutiny.  Like hearing and seeing, speaking "is a basic human need materially affecting daily activity."  *Gilmore*, 738 F.3d at 275; *cf. De Rossitte*, 22 F.4th at 803 (crediting the plaintiff's allegations that a lack of hearing aids "left 'his daily interactions difficult for over a year' and 'impair[ed his] daily activities'").  The inability to speak to others on a daily basis can be a serious medical need, though it does "not inevitably entail pain." *Koehl*, 85 F.3d at 88.  The "isolation caused by" the inability to communicate "could do serious harm to . . . mental health."  *Gilmore*, 738 F.3d at 276; *see Cooper*, 255 F. App'x at 891 (crediting a plaintiff's assertions that the "denial of a hearing aid . . . has caused him to become depressed").

Lacy alleges that he has a medical need for the device and equipment that the defendants confiscated; that he cannot speak without them; that his devices were confiscated about a year and

a half ago; that he suffers continuing harm because he cannot talk; and that his inability to talk could be disastrous in an emergency. (Docket Entry No. 1-3 ¶¶ 9, 13, 25–27, 31(a), (b)). Although the defendants argue that these general allegations of harm are insufficient, courts have held that similar allegations are sufficient because "[i]t takes no great leap of logic to suggest that" continued denial of such a basic daily function can do "serious harm to physical and mental health." *Gilmore*, 738 F.3d at 276 (hearing aids); *De Rossitte*, 22 F.4th at 803 (denying a motion to dismiss without addressing particular allegations of harm). The defendants' alleged intentional deprivation of Lacy's medically necessary artificial larynx for over a year pleads an Eighth Amendment violation.

The defendants moved to dismiss Lacy's Eighth Amendment claim for three reasons: (1) a violation of the Eighth Amendment requires a substantial risk of harm; (2) Lacy does not allege that the defendants acted with deliberate indifference; and (3) the Eighth Amendment violation was not clearly established at the time the alleged misconduct. (Docket Entry No. 4 at 12–15). Only the third argument is meritorious.

First, the defendants argue that the plaintiff can only show an Eighth Amendment violation based on a substantial risk of serious harm. *See Garrett v. Lumpkin*, 96 F.4th 896, 900 (5th Cir. 2024). But as already discussed, the "isolation caused by" the inability to communicate "could do serious harm to . . . mental health," *Gilmore*, 738 F.3d at 276, including causing depression, *see Cooper*, 255 F. App'x at 891. Deprivation of "a basic human need materially affecting daily activity" is itself a harm, *Gilmore*, 738 F.3d at 275, even though it does "not inevitably entail pain," *Koehl*, 85 F.3d at 88. Subjecting prisoners to conditions that might cause hearing loss, blindness, or muteness count as serious harm. *See Smith Steel Casting Co. v. Brock*, 800 F.2d 1329, 1344 (5th Cir. 1986) ("[C]ontinuous exposure over a long period of time could possibly result in total loss of hearing which could, of course, be considered 'serious physical harm.'"). There is little

reason to conclude that withholding a device that is necessary for speech—effectively making the prisoner mute—is materially different.

Second, the defendants argue that Lacy does not allege that they acted with deliberate indifference. Lacy "must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'" *Domino*, 239 F.3d at 756 (quoting *Johnson*, 759 F.2d at 1238). Lacy alleges that his cancer doctor gave him the artificial larynx and related medical supplies, (Docket Entry No. 1-3 ¶ 13); that he cannot talk without the artificial larynx, a device that he holds to his neck and is connected to his mouth, (*id.* ¶¶ 24–27); and that the defendants in bad faith deprived him of this medically necessary device, (*see id.* ¶¶ 18–19, 34–45). Lacy alleges that the defendants intentionally deprived him of a device that they knew was medically necessary because he cannot talk without it. The facts alleged about Lacy's medical condition permit the inference that the defendants "intentionally treated him incorrectly" and with a wanton disregard for his need for the device.

Third, the defendants argue that they are entitled to qualified immunity. The court agrees. Although the Fifth Circuit has held that denials of hearing aids and eyeglasses can constitute an Eighth Amendment violation, *see, e.g.*, *Newman*, 503 F.2d at 1331; *Cooper*, 255 F. App'x at 891, the court has not found a case by this or other circuit courts that has dealt with an artificial larynx. The novelty of Lacy's Eighth Amendment claim entitles the defendants to qualified immunity. The Eleventh Circuit applied qualified immunity in *Gilmore*, holding that "[a] finding that vision impairment may give rise to a serious medical need does not lead ineluctably to the same answer for hearing loss." 738 F.3d at 278. Similarly, a finding that deprivations of those senses create serious medical needs does not "lead ineluctably" to the same conclusion for speaking loss. The

court reaches that conclusion in this case, but the issue is not "beyond debate."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).  The defendants enjoy qualified immunity.

Lacy's Eighth Amendment claim is dismissed with prejudice to the extent he requests damages.  Lacy's Eighth Amendment claim survives the motion to dismiss to the extent he requests injunctive relief to remedy the alleged violation.  *See Singleton v. Cannizzaro*, 956 F.3d 773, 778 n.3 (5th Cir. 2020).

## B.    The Motion to Appoint Counsel

Because claims in Lacy's complaint survive dismissal, the lawsuit will proceed.  Lacy has moved for the appointment of counsel to assist in prosecuting his case.  (Docket Entry Nos. 12, 13, 18).

Under 28 U.S.C. § 1915(e)(1), "[t]he court may request an attorney to represent any person unable to afford counsel."  There is no right to appointment of counsel in a civil case.  *Jackson v. Dallas Police Dep't*, 811 F.2d 260, 261 (5th Cir. 1986) (per curiam); *Salmon v. Corpus Christi Indep. Sch. Dist.*, 911 F.2d 1165, 1166 (5th Cir. 1990).  An indigent civil litigant does not have a right to appointed counsel absent "exceptional circumstances."  *Norton v. E.U. Dimazana*, 122 F.3d 286, 293 (5th Cir. 1997); *Akasike v. Fitzpatrick*, 26 F.3d 510, 512 (5th Cir. 1994).  A court may appoint counsel in a civil case if exceptional circumstances make it necessary for the proper administration of justice.  *Ulmer v. Chancellor*, 691 F.2d 209, 212–13 (5th Cir. 1982).  The court may consider the following factors in deciding whether exceptional circumstances justifying such an appointment are present and whether appointed counsel would facilitate the administration of justice: (1) the complexity of the suit; (2) the ability of the indigent litigant to present the case; (3) the litigant's ability to investigate the case; and (4) the skill required to litigate the case before the court.  *Id.* at 212–13.  "[T]he burden is on the plaintiff to demonstrate that, unique from other *pro*

*se* litigants, he will have particular difficulty in investigating and presenting his case such that his situation justifies the special benefit of having counsel appointed to represent him." *Margin v. Soc. Sec. Admin.*, No. CIV.A. 08-4605, 2009 WL 3673025, at *2 (E.D. La. Oct. 28, 2009).

Courts routinely provide "assistance to participants in court proceedings who are deaf, hearing-impaired, or have communication disabilities." *Phillips v. Cario*, No. 5:26-CV-9-PGB-PRL, 2026 WL 89614, at *3 (M.D. Fla. Jan. 13, 2026). For some individuals, the right to access the courts and due process may depend on access to counsel. As a result, "appointed counsel may be required in a civil proceeding as an accommodation for a litigant who is disabled." *Patton v. Thompson*, No. 2:25-CV-00810 SCR P, 2025 WL 2829173, at *9 (E.D. Cal. Oct. 6, 2025). This case raises those concerns because Lacy is alleging that the defendants have confiscated a medically necessary device that allows him to speak. Without the device, he may be unable to develop or present his case.

The court will appoint counsel because this case is proceeding past the pleading stage and there is no indication that the defendants have returned the medical devices and equipment Lacy needs to speak. Counsel will be appointed by a separate order.

## IV.    Conclusion

The motion to remand, (Docket Entry No. 6), is denied. Lacy's motions to appoint counsel, (Docket Entry Nos. 12, 13, 18), are granted. The defendants' motion to stay discovery, (Docket Entry No. 11), is denied.

The defendants' motion to dismiss, (Docket Entry No. 4), is granted in part and denied in part. Lacy's request for injunctive relief barring the defendants from retaliating, harassing, discriminating, or transferring him to any other TDCJ Unit is denied, without prejudice, for lack of standing. Lacy's claims against the defendants for damages in their official capacity are

20

dismissed, with prejudice.  Lacy's theft and conversion claims are dismissed, without prejudice, as premature.  Lacy's negligence claim is dismissed, without prejudice; Lacy has leave to amend his medical negligence claim.  Lacy's due-process claim is dismissed, with prejudice.  Lacy's retaliation claim is dismissed in part, without prejudice; Lacy's clams against Rosario and Sullivan survive dismissal.  Lacy's Eighth Amendment and Texas constitution claims are dismissed in part, with prejudice; qualified immunity bars Lacy's request for damages.  Lacy's ADA and RA claims were not subject to the motion to dismiss and remain in the case.

Lacy must amend his complaint by March 27, 2026.

SIGNED on February 25, 2026, at Houston, Texas.

_____

Lee H. Rosenthal
Senior United States District Judge